# UNITED STATES BANKRUPTCY COURT
## WESTERN DISTRICT OF WASHINGTON

**KAREN A. OVERSTREET**
Bankruptcy Judge

United States Courthouse
700 Stewart St., Rm. 7216
Seattle, WA 98101-1271
Phone: 206-370-5330
Fax: 206-370-5335
www.wawb.uscourts.gov

December 11, 2014

**Via CM/ECF**

Mr. Gregory L. Davies
Law Office of Gregory L Davies
3721 Colby Ave
Everett, WA 98201

Mr. Kenneth Schneider
Attorney At Law
2015 33rd St.
Everett, WA 98201

Re: *Earley-Wall v. Dunnington;* Adversary No. 14-01107

## COURT'S LETTER RULING

Dear Counsel:

This matter came before me for trial on November 18, 2014. Mr. Davies appeared on behalf of his client, Tammy Earley-Wall (the "Plaintiff"), and Mr. Schneider appeared on behalf of his client, Brett Dunnington, the debtor and defendant herein (the "Defendant"). This is an action by the Plaintiff, the former wife of Defendant, for a determination that an obligation arising from the parties' divorce decree in the amount of $45,000 is nondischargeable under 11 U.S.C. §523(a)(5).

I have jurisdiction of this matter, and it is a core proceeding. For the following reasons, which constitute my findings of fact and conclusions of law for purposes of Bankruptcy Rule 7052, I find in favor of the Defendant.

### FACTS

The Plaintiff and the Defendant were married on February 22, 1986. After 23 years of marriage, the marriage was dissolved on August 25, 2009, pursuant to a Decree of Dissolution, amended on August 31, 2009 (the "Amended Decree"). Ex. P-11 and P-12. The parties' divorce was resolved without a trial after negotiations. Both parties were represented by counsel.

1

The Plaintiff testified at trial that at the time of the dissolution, only one of the former couple's four children, a son, was still a minor. Following the separation, their son resided primarily with the Defendant. Ex. P-9. According to the Financial Declaration filed by the Defendant in the state court on June 25, 2008, his total gross monthly income was $8,894.40. Ex. D-1. The Plaintiff filed her own Financial Declaration in state court on February 10, 2009, which showed that her total gross monthly income was $2,394.78. Ex. P-4.

The Plaintiff testified that at the end of her marriage to the Defendant, she was working as a courier for Providence Hospital. Plaintiff filed a pretrial statement in state court, which asserted that she had entered the workforce in this position with the hospital five years prior to the divorce. Ex. P-7. She also testified that at the time of her divorce, her highest level of education was 11th grade, and that she had not received her GED. The Plaintiff testified that she was not self-sufficient at the time of the divorce, explaining that she needed to live with her mother after the separation and was unable to pay many of her debts and obligations, including her legal fees from the divorce. As part of the completion of their dissolution, the parties filed a child support worksheet. Ex. P-9. This worksheet determined the amount that each parent would be financially responsible for the care of their son. *Id.* The calculation was made by comparing the incomes of each party and making a proportional award. The worksheet showed that the Plaintiff's proportional share of the parties' total income was 26.2% and the Defendant's was 73.8%. *Id.* The Plaintiff, as the noncustodial parent, was the only party obligated to pay child support. *Id.* According to the worksheet, the Plaintiff would have been obligated to pay child support to the Defendant in the amount of $319.12. *Id.*

Given the Plaintiff's lack of income, the parties agreed that the Plaintiff's child support obligation would be offset by the Defendant's maintenance obligation. *See* Amended Decree Section 3.7. This section provides as follows:

> Husband shall not pay maintenance to Wife in lieu of Wife not paying child support to Husband as provided for in the Order of Child Support filed simultaneously with this Decree. If Husband moves to modify the Order for Child Support, Wife may likewise move to modify this provision providing for no maintenance to be paid to her at this time.

*Id.*

Pursuant to the Amended Decree, the Defendant was awarded the former couple's home and the other items of personal property shown on an Exhibit 1 to the Amended Decree. The Plaintiff was awarded (i) various items of personal property, (ii) a one-half interest in the Defendant's union pension/retirement fund, and (iii) $45,000.00 as an "equalizing judgment" to be paid by Defendant in monthly installments of $500 until their minor son reached the age of 18 or graduated from high school, whichever was later (the "Obligation"). Ex. P-12 at Exhibit 1. The Defendant was then required to remit the remaining balance to the Plaintiff in a lump sum. *Id.* The first ten monthly payments were to be made to the Plaintiff's attorney, with the remaining payments to be made directly to the Plaintiff. *Id.* The Plaintiff testified at trial that these payments were to be retained by her attorney as payment of her legal fees and costs.

The Plaintiff testified that the Obligation was calculated based on the amount of equity in the former couple's home, but that she believed it represented both a property settlement and maintenance. The Plaintiff further testified that she believed she would have received more than that amount had the home been sold at the time the Amended Decree was entered, and that she needed maintenance, but traded some of it for an elimination of her child support payment.

The Plaintiff's state court attorney, P. Jayson Thibodaux, testified that the issue of maintenance was raised when the parties negotiated the decree due to the length of the marriage, the Plaintiff's need for support, and the Defendant's historically high earnings. He further testified that they agreed to offset maintenance with child support because the Plaintiff had insufficient income to pay anything and they set the equalizing monthly amount at a lower level to reflect the Defendant's unemployment at the time of the Amended Decree. The agreement also reflected both parties' desire to allow their son to remain in the home until he turned 18 or graduated from high school, whichever occurred later. However, neither the Plaintiff nor her attorney testified specifically that the Obligation was intended to be maintenance as opposed to a property settlement.

The Defendant testified that he agreed to the foregoing terms so that his son could remain in the home, which he asserted was a requirement of the parenting plan. Both Defendant and his state court attorney, Mr. William Tri, testified that the Obligation was intended to be a property settlement representing the Plaintiff's one-half interest in their home and was not intended as maintenance. Instead, according to Mr. Tri, the Defendant's maintenance obligation was addressed by way of setoff against the Plaintiff's obligation to pay child support so that the Plaintiff was not required to pay anything. Mr. Tri further testified that he was aware of the different treatment of property settlements and maintenance awards in bankruptcy proceedings and that he specifically intended the Obligation to be a property settlement. He said the parties had no negotiations over treating the Obligation as maintenance.

The Defendant was unable to make the payments on the Obligation as contemplated in the Amended Decree. The Defendant testified that he made the first ten payments to the Plaintiff's attorney, Mr. Thibodaux, but then stopped making payments. Thus, the Defendant never made any payments directly to the Plaintiff. The Defendant testified that he stopped making payments due to the fact that he was unemployed and had been in a car accident that left him injured and unable to work. Defendant filed a Chapter 13 bankruptcy petition on January 7, 2014.

In his Schedule F, filed on January 7, 2014, the Defendant characterized the Plaintiff's claim as a property settlement that was disputed, and he stated under oath that the balance remaining on the debt was unknown. Dkt. 1, Case No. 14-10099. The Defendant's Schedule J showed average monthly income of $6,384.78 with net disposable income of $1,970.61 after deducting personal and other expenses. Schedule J also shows that, at the time of the bankruptcy filing, their son continued to reside with the Defendant. The Defendant does not have a line item in his budget for any payment to Plaintiff. *Id.* The Defendant's statement of financial affairs shows gross income of $92,662.36 for 2013 and $91,202.00 for 2012 from wages and expense reimbursement. *Id.*

## CONCLUSIONS OF LAW

The Plaintiff has the burden of proving by a preponderance of the evidence that the Obligation is in the nature of alimony, maintenance or support. Section 523(a)(5), 11 U.S.C., excepts from discharge debts "for a domestic support obligation." Section 101(14A) defines "domestic support obligation" as a debt owed to a spouse or former spouse that is "in the nature of alimony, maintenance, or support **…**without regard to whether such debt is expressly so designated."[1]

For the purposes of this matter, Section 101(14A) has four relevant components: a domestic support obligation must be (1) owed to a spouse; (2) "in the nature of alimony, maintenance, or support, without regard to whether it is expressly so designated;" (3) established by reason of a divorce decree; and (4) not be assigned to a governmental entity. There is no dispute in this case that the Obligation meets the requirements of (1), (3) and (4). The only real dispute is whether the Obligation is in the nature of support or maintenance.

By its express language "without regard to whether it [the obligation] is expressly so designated" the statute does not bind my decision by the label in the Amended Decree. Under the Amended Decree, the Obligation is listed in Exhibit A as a part of the "Dunnington Division of Property and Debt." Ex. P-12, p. 7. Additionally, the Defendant's liability for the Obligation is not listed in Section 3.7 of the Amended Decree, which addresses maintenance. *Id.* at 5.

The analysis under Section 523(a)(5) begins with the principle that discharge is favored under the Bankruptcy Code and the party asserting nondischargeability has the burden of demonstrating that the obligation at issue is actually in the nature of alimony, maintenance or support. *In re Gibson*, 103 B.R. 218, 220 (9th Cir. BAP 1989); *see also* Bankruptcy Rule 4005. Bankruptcy courts look to federal law, not state law, to determine whether an obligation is actually in the nature of alimony, maintenance or support. Although not bound by state law, courts can, however, look to state law for guidance. *Id.*

In determining whether an obligation is intended for support of a former spouse, the court must look beyond the language of the decree to the intent of the parties and to the substance of the obligation. *Shaver v. Shaver*, 736 F.2d 1314, 1316 (9th Cir. 1984). Although *Shaver v. Shaver* predates the changes to 523(a) and 101(14A) made in 2005, its test for determining how to characterize an obligation under a divorce decree is still applicable. According to *Shaver*, a trial court should consider several factors in determining the parties' intended characterization of the obligation. *Id.* at 1316. Those factors are: (1) whether the recipient spouse actually needed spousal support at the time of the divorce, which includes determining whether there was an "imbalance in the relative income of the parties" at the time of the divorce decree; (2) whether

---

[1] Section 523(a)(5) was rewritten in connection with the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005. The language in 523(a)(5) was simplified to make nondischargeable a debt for a domestic support obligation, and much of the language previously contained in (a)(5) was moved to the definitional Section in 101(14A).

4

the obligation terminates upon the death or remarriage of the recipient spouse; (3) whether the payments are "made directly to the recipient spouse and are paid in installments over a substantial period of time;" and (4) the labels given to the payments by the parties may be looked at as evidence of the parties' intent. *Id*. at 1316-17. *See also In re Sternberg*, 85 F.3d 1400, 1405 (9th Cir. 1996). These factors are considered at the time the divorce decree is entered rather than at the time the dischargeability question is addressed. *See In re Sampson*, 997 F.2d 717, 723 (10th Cir. 1993) ("the critical inquiry is the shared intent of the parties at the time the obligation arose"); *In re Combs*, 101 B.R. 609, 615 (9th Cir. BAP 1989) ("the court must ascertain the intention of the parties at the time they entered into their stipulation agreement").

The first *Shaver* factor directs the court to consider whether the recipient spouse actually needed spousal support at the time of the divorce. This review includes determining whether there was an "imbalance in the relative income of the parties" at the time of the divorce decree. In this case, the Amended Decree does not mention support or maintenance in connection with the Obligation. Ex. P-12. There is no dispute, however, that the Plaintiff effectively received $319.12 as maintenance by way of offset against her obligation for child support. Based on the information contained in the Financial Declarations submitted as exhibits, I conclude that there was a significant disparity in the incomes of the parties as of the time the Decree was entered and that Plaintiff proved that she did need maintenance. The Defendant attempted to refute this testimony at trial, but I find that there was such an imbalance in their relative incomes and actual need for the support that the first *Shaver* factor is satisfied.

The second *Shaver* factor focuses on whether the obligation terminates upon the death or remarriage of the recipient spouse: "If an obligation terminates on the death or remarriage of the recipient spouse, courts may be inclined to classify the agreement as one for support." *Shaver*, 736 F.2d at 1314, *citing In re Woods*, 561 F.2d 27, 30 (7th Cir. 1977). This is because the obligation is reflective of the needs of the recipient spouse. In this case, there is no language in the Amended Decree that terminates the Obligation upon the Plaintiff's death or remarriage. Ex. P-12. Instead, the Amended Decree addressed the parties' desire that their son be able to stay in the home until he turned 18 or finished high school, at which time the entire remaining amount of the Obligation would be due. Thus, the Amended Decree was more directed at addressing the needs of the parties' son rather than the needs of the Plaintiff. I therefore conclude that the terms of the Obligation do not satisfy the second *Shaver* factor.

The third *Shaver* factor directs the court to consider whether the payment of the Obligations is "made directly to the recipient spouse" and in the form of installments over a substantial period of time. In *Shaver,* the court noted that support usually is paid directly to the recipient spouse over an extended period of time. In this case, although the Obligation was to be paid monthly, the first ten payments were to be made to the Plaintiff's state court attorney, and the payments were only to be made while the son was still a minor. Ex. P-12. The son was approximately 14 at the time of the dissolution, so the Decree required only about four years of monthly payments, which would have totaled about $24,000 of the total Obligation. Ex. P-7. The Plaintiff testified at trial that the payments to her attorney totaling $5,000 were meant to satisfy her legal fees owing to him, and that she did not receive the proceeds of any of these payments. Although the Obligation does call for some payments to be made directly to the Plaintiff, their

initial redirection to the Plaintiff's attorney and the relatively short term of the monthly payments lead me to conclude that the third *Shaver* factor is not met in this case.

Finally, under *Shaver*, the labels given to the payments by the parties may be looked at as evidence of the parties' intent. As previously noted, in this case, the Obligation is listed as part of the parties' division of property and debts. Ex. P-12. Moreover, the Amended Decree does include an award of maintenance in Section 3.7, which is offset by the Plaintiff's child support obligation in the amount of $319.12 to the Defendant. *Id.* This leads me to conclude that the fourth *Shaver* factor is not met in this case.

Plaintiff argues that Washington state law supports her contention that the Obligations were in the nature of support. RCW 26.09.090 directs that in ordering maintenance, the court should consider:

> 1. The financial resources of the party seeking maintenance, including separate or community property apportioned to him or her, and his or her ability to meet his or her needs independently, including the extent to which a provision for support of a child living with the party includes a sum for that party;
>
> 2. The time necessary to acquire sufficient education or training to enable the party seeking maintenance to find employment appropriate to his or her skill, interests, style of life, and other attendant circumstances;
>
> 3. The standard of living established during the marriage or domestic partnership;
>
> 4. The duration of the marriage or domestic partnership;
>
> 5. The age, physical and emotional condition, and financial obligations of the spouse or domestic partner seeking maintenance; and
>
> 6. The ability of the spouse or domestic partner from whom maintenance is sought to meet his or her needs and financial obligations while meeting those of the spouse or domestic support partner seeking maintenance.

I agree with the Plaintiff that the foregoing factors under RCW 26.09.090 support her need for maintenance at the time of the dissolution. The parties ended a long-term marriage during which Plaintiff earned only minor supplemental income. The Defendant's steady earnings and the evidence at trial convince me that the parties were able to enjoy a middle class standard of living during their marriage. Upon the divorce, however, Plaintiff had no ability to maintain this standard of living without maintenance.

Although Plaintiff established her need for maintenance, the other factors considered under *Shaver*, (1) the structure of the Obligation's payments, (2) the lack of termination on death or remarriage, and (3) the characterization of this Obligation in the decree, support Defendant's contention that the Obligation was a property settlement. Further, Plaintiff reached an agreement

with Defendant to accept an offset against her child support obligation to satisfy Defendant's maintenance obligation.

      I conclude that the Defendant's liability for the Obligation is in the nature of a property settlement and therefore is dischargeable. This ruling, however, is without prejudice to the right of the Plaintiff to seek a modification of the Amended Decree to require the Defendant to pay her maintenance now that her obligation to pay child support has terminated.

      Defendant's counsel is instructed to prepare an order and judgment consistent with this ruling and note them for presentation on one of my regular motion calendars.

      Very truly yours,

      */s/ Karen A. Overstreet*

      Karen A. Overstreet
      United States Bankruptcy Judge